UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOVIA S. WEBSTER-COLQUHOUN,

                          Plaintiff,

     v.

ROBERT R. COLQUHOUN,

                         Respondent.

No. 21-CV-7101 (KMK)

OPINION & ORDER

Appearances:

Nancy M. Green, Esq.
Richard Min, Esq.
Burger Green & Min LLP
New York, NY
*Counsel for Petitioner*

Robert R. Colquhoun
Mount Vernon, NY
*Pro Se Respondent*

KENNETH M. KARAS, District Judge:

      Petitioner Novia S. Webster-Colquhoun ("Petitioner" or "Webster-Colquhoun") brought this Petition against pro se Respondent Robert. R. Colquhoun ("Respondent" or "Colquhoun") under the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001, for the return of their child, A.C. (the "Child"), to Jamaica, from where she was staying with Respondent in Mount Vernon, NY.  (Pet. ¶¶ 1–2, 8 (Dkt. No. 1).)  After the Parties voluntarily agreed that Respondent would return the Child to Jamaica, and the Court entered a Voluntary Return Order reflecting their agreement, (*see* Voluntary Return Order (Dkt. No. 14)), Petitioner brought a Motion for Attorney's Fees and Costs (the "Motion"), (*See* Pet'r's Mot. for

Attorney's Fees and Costs and Mem. of Law ("Pet'r's Mot.") (Dkt. No. 18)).  For the reasons explained below, the Motion is granted in part and denied in part.

## I.  Background

### A. Factual Background

According to the Petition, Petitioner is a citizen of Jamaica, and Respondent is a dual citizen of Jamaica and the United States.  (Pet. ¶¶ 10–11.)  The Parties married in Jamaica in October 2011.  (*Id.* ¶¶ 13–14.)  After they married, Petitioner continued living in Jamaica, and Respondent traveled back and forth between Jamaica and the United States.  (*Id.* ¶ 15.)  The Child was born in 2012 in Jamaica.  (*Id.* ¶ 16.)  In April 2015, Petitioner and Respondent separated, after Respondent allegedly became physically abusive toward Petitioner.  (*Id.* ¶ 17.)  According to Petitioner, the Parties informally agreed that Petitioner would have custody of the Child and Respondent would have visitation in New York during holiday periods.  (*Id.* ¶ 18.)  From 2015 to 2020, the Child would visit Respondent during the summer and Christmas holidays for approximately four to six weeks.  (*Id.*)  On August 1, 2020, the Child left Jamaica to visit Respondent in New York for the summer holiday, and the Parties had agreed that the Child would return by September so that she could start the school semester in Jamaica.  (*Id.* ¶ 19.)  By September 2020, Respondent had not returned the Child to Jamaica.  (*Id.* ¶ 20.)  According to Petitioner, she never consented to the Child staying in the United States, and Respondent refused to return the Child to Jamaica despite frequent requests for her return.  (*Id.* ¶ 22.)  Petitioner also alleged that the Child expressed to her that she wanted to return to Jamaica.  (*Id.* ¶ 23.)  According to Respondent, he believed it was safer for the Child to remain in the United States because the risk of COVID-19 was greater in Jamaica.  (Aff. of Robert. R. Colquhoun

("Colquhoun Aff.") ¶ 4 (Dkt. No. 18).)  As of November 21, 2021, the Parties were involved in divorce and custody proceedings in Jamaica.  (*Id.* ¶ 5.)

B. Procedural History

Petitioner filed the Petition on August 23, 2021.  (Dkt. No. 1.)  On the same day, Richard Min, Esq. ("Min") filed a Notice of Appearance indicating that he was representing Petitioner in this matter on a pro bono basis.  (Dkt. No. 3.)  On August 25, 2021, Petitioner filed Motion to Expedite the Proceedings.  (Dkt. No. 5.)  On the same day, the Court granted Petitioner's request to proceed in forma pauperis.  (Dkt. No. 6.)  The Court issued an Order to Show Cause on September 30, 2021.  (Dkt. No. 8.)  After a few adjournments, the Court held a hearing on November 3, 2021, (*see* Dkt. (minute entry for Nov. 3, 2021)), during which the Parties signed and the Court entered a Voluntary Return Order securing the return of the Child to Jamaica, (Dkt. No. 14).  Petitioner filed the Motion for Attorney's Fees and Costs on November 17, 2021, along with accompanying papers that were filed on December 9, 2021.  (Dkt. Nos. 15–17.)  Also on December 9, 2021, Respondent filed a Reply Affidavit.  (Dkt. No. 18.)

II.  Discussion

A. Applicable Law

The Hague Convention provides that, where a court orders the return of a child under the Convention, the court:

> *may*, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Hague Convention, art. 26 (emphasis added).  ICARA provides

> [a]ny court ordering the return of a child pursuant to an action brought under section 11603 of this title *shall* order the respondent to pay necessary expenses incurred by

3

> or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3) (emphasis added). The Second Circuit has held that, in light of these provisions, "a prevailing petitioner in a return action is presumptively entitled to necessary costs, subject to the application of equitable principles by the district court." *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013). The Second Circuit has also held that "the appropriateness of such costs depends on the same general standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'" *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)); *see also Nissim v. Kirsh*, No. 18-CV-11520, 2020 WL 3496988, at *2 (S.D.N.Y. June 29, 2020) (same). "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the [relevant] considerations." *Ozaltin*, 708 F.3d at 375. (alteration in original).

    B. Application to Facts

        1. Appropriateness of Award

The first question is whether Petitioner is the prevailing party, given that Respondent voluntarily agreed to return A.C. to Jamaica pursuant to a Voluntary Return Order. Petitioner points to *Salazar v. Maimon*, 750 F.3d 514 (5th Cir. 2014), in which the Fifth Circuit held that "both judgments on the merits and settlement agreements enforced through consent decrees are sufficient to create prevailing party status for purposes of authorizing an award of attorneys' fees," because "[a]lthough [the respondent's] relinquishment [of the child] was voluntary, the court order accepting the parties' agreement was a judicial act that modified [the respondent's] behavior to confer a direct benefit upon [the petitioner]." *Id.* at 522. (*See also* Pet'r's Mem. ¶¶ 42–44.) In *Salazar*, the appellate court affirmed the district court's decision to award the

petitioner attorney's fees after the parties reached a settlement in which the respondent agreed to voluntarily return the child to petitioner. *Id.* at 517.

In *Onrust v. Larson*, No. 15-CV-122, 2015 WL 6971472 (S.D.N.Y. Nov. 10, 2015), the court, citing *Salazar*, acknowledged that "to be a prevailing party under ICARA, a party need not win at trial or summary judgment" and that "a consent decree can suffice," but nevertheless declined to award attorney's fees, noting that, "consistent with the mutual benefits yielded by the settlement, it is right that each party bear its own fees and costs." *Id.* at *7, *12. Like the consent decree in *Onrust*, the Voluntary Return Order "gives the parties an agreed forum to which to turn in the event of future disagreements about [the Child's] care and custody." *Id.* at *12. (*See* Voluntary Return Order ¶ 3 ("[A]ll future custody/visitation or other issues pertaining to the minor child shall be determined by the courts in Jamaica, where there are ongoing proceedings.").) However, in *Ontrust*, "both parties made important concessions," such that the court therefore viewed both parties as having prevailed. *Onrust*, 2015 WL 6971472, at *12.

Here, like in *Salazar*, but unlike in *Ontrust*, the Voluntary Return Order primarily represents a concession on Respondent's part, because it mandates that he return the Child to Jamaica and designates Jamaica as the Child's home state. (*See* Voluntary Return Order ¶¶ 1, 3.) In contrast, in *Ontrust*, respondent secured considerable concessions from petitioner, including extended and delineated visitation with the child during the year, as well as meaningful protections to guard against a recurrence of abuse that the child suffered at the hands of petitioner and her partner. *Ontrust,* 2015 WL 6971472, at *12. There are no such allegations of wrongdoing by Petitioner in the instant case, and the Voluntary Return Order does not affirmatively give Respondent visitation rights—it simply leaves the determination up to the court in Jamaica. (*See generally* Voluntary Return Order; Colquhoun Aff.) Notably, also like in

5

*Salazar*, the conflict arose when the Respondent did not return the Child to Petitioner after summer break ended and school was scheduled to begin, contrary to the Parties' informal custody arrangement.  (*See* Pet. ¶¶ 20–22.)[1]  The Court finds that the instant facts are more similar to *Salazar* than *Ontrust*.  Petitioner is therefore the prevailing party and is presumptively entitled to necessary costs.  *Ozaltin*, 708 F.3d at 375.

"[The] presumption of an award of expenses to a prevailing petitioner is subject to a broad caveat denoted by the words, 'clearly inappropriate.'"  *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 79 (2d Cir. 2016).  "Generally, in determining whether expenses are "clearly inappropriate," courts have considered the degree to which the petitioner bears responsibility for the circumstances giving rise to the fees and costs associated with a petition."  *Id.*  For example, in *Souratgar*, the Second Circuit found that an award of attorney's fees and costs would be "clearly inappropriate" where "the petitioner engaged in multiple, unilateral acts of intimate partner violence against [the respondent] and that [the respondent's] removal of the child from the habitual country was related to that violence."  *Id.* at 80.  Here, by contrast, there are no allegations that Petitioner committed intimate partner violence or anything close to that.  In fact, Petitioner alleges that she and Respondent separated because he became "physically abusive" toward *her*.  (Pet. ¶ 17.)[2]

---

[1] The Court notes that in *Salazar*, the respondent's refusal to return the child after the child's summer break violated a custody order that was already in place in Venezuela.  *Salazar*, 750 F.3d at 517.  Here, by contrast, the custody proceedings in Jamaica are still ongoing. (Colquhoun Aff. ¶ 5.)

[2] The Court notes that, because the Parties settled and the Court did not hold a hearing, it will treat the allegation of physical abuse as an allegation and will make no finding of fact on the matter.

In considering whether an award of fees and costs would be clearly inappropriate, courts within the Second Circuit have also considered whether the respondent had "a reasonable basis for removing the children to the United States." *Ozaltin*, 708 F.3d at 375. Here, Respondent alleges that he did not return the Child to Jamaica in August 2020 due to the risk of the COVID-19 pandemic, which he believed was greater in Jamaica than in the United States. (Colquhoun Aff. ¶ 4.) Even if the Court credited this explanation—which Respondent does not back up with any data—it would not explain why he still had not returned the Child to Jamaica a year later, when the Petition was filed.

Finally, "a respondent's inability to pay an award is a relevant equitable factor for courts to consider in awarding expenses under ICARA." *Souratgar*, 818 F.3d at 81. Here, the Court is unable to take Respondent's ability to pay into account because the Respondent did not provide any information regarding his financial condition. (*See* Colquhoun Aff.) *See also Paulus ex rel. P.F.V. v. Cordero*, No. 12-CV-986, 2013 WL 432769, at *10 (M.D. Pa. Feb. 1, 2013) (finding that the respondent did not "establish that ordering her to pay attorneys' fees [was] clearly inappropriate" where the "record [was] devoid of any evidence or documentation showing [the respondent's] employment status, income, or assets"); *Knigge ex rel. Corvese v. Corvese*, No. 01-CV-5743, 2001 WL 883644, at *4 (S.D.N.Y. Aug. 6, 2001) (declining to consider the respondent's ability to pay where he did not provide any information to the court indicating that he would "suffer any financial hardship by paying the expenses incurred by petitioner in th[e] case"). That Respondent represents himself does not change this result. For example, in *Gee v. Hendroffe*, No. 14-CV-2795, 2015 WL 2151885, at *3 (S.D. Tex. May 7, 2015), the court awarded attorney's fees and costs to a pro se respondent where she "fail[ed] to provide documentation of financial status. *Id.* at *3.

7

In sum, after assessing the relevant equitable factors, and in the "absence of countervailing equitable factors in favor of [Respondent]," *Souratgar*, 818 F.3d at 82, the Court finds that awarding Petitioner attorney's fees and costs would not be clearly inappropriate. Petitioner is thus entitled to necessary fees and costs.

This result is not changed by the fact that Petitioner was represented by pro bono counsel. "[T]he fact that the petitioner in this case was represented by pro bono counsel does not provide a basis for disregarding the Conventions fee provision." *Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 209 (E.D.N.Y. 2010), *aff'd*, 401 F. App'x 567 (2d Cir. 2010); *see also Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010) ("The fact that [the petitioner's] lawyers provided their services pro bono does not make a fee award inappropriate."); *Sullivan v. Sullivan*, No. CV-09-545, 2010 WL 1651994, at *1 (D. Idaho Apr. 21, 2010) ("[E]ven where a case is taken on a pro bono basis, the [p]etitioner is still entitled to recovery of reasonable attorney fees."). This serves several purposes: (1) "to deter future child abductions," and (2) "encourage lawyers to represent petitioners in Hague Convention cases on a pro bono basis in the future." *In re JR*, No. 16-CV-3863, 2017 WL 74739, at *4 (S.D.N.Y. Jan. 5, 2017). However, "it is a factor that cuts against any such award." *Vale v. Avila*, No. 06-CV-1246, 2008 WL 5273677, *2 (C.D. Ill. Dec. 17, 2008). Accordingly, the Court finds that

> although [Burger Green & Min LLP] provided competent and professional legal services throughout the course of this case, the fact remains that it agreed to take on the case on a pro bono basis and therefore did not expect to be paid for its services or reimbursed for its expenses. While, nevertheless, full payment of its legal fees is appropriate to carry out ICARA's fee-shifting provisions, full payment of costs is not.

*Duran-Peralta v. Luna*, No. 16-CV-7939, 2018 WL 1801297, at *6 (S.D.N.Y. Apr. 2, 2018) (reducing the attorney's fees by 30% and costs by 50% where the petitioner was represented by pro bono counsel).

8

2. Amount of Award

The Court next considers the amount of attorney's fees and costs to be awarded. "As for the appropriate amount of attorneys' fees and costs, "[b]oth the [Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." *Nissim*, 2020 WL 3496988, at *2 (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (quotation marks omitted). "Courts determine the reasonable hourly rate by considering case-specific variables such as the complexity of the case, the amount of work required, the attorney's experience, and awards in similar cases." *Id.* at 3 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189 (2d Cir. 2008)) (quotation marks omitted). Courts also consider whether the rates sought by the petitioner are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006).

"Notably, courts in this District have not awarded more than $425 per hour in a Hague Convention case." *Nissim*, 2020 WL 3496988, at *3 (quotation marks omitted); *see also Grano v. Martin*, No. 19-CV-6970, 2021 WL 3500164, at *3 (S.D.N.Y. Aug. 9, 2021) (same); *Wtulich v. Filipkowska*, No. 16-CV-2941, 2020 WL 1433877, at *2 (E.D.N.Y. Mar. 24, 2020) ("[C]ourts in surrounding districts have generally approved hourly rates no higher than $425 for [Hague Convention] litigation and have typically approved rates of $200 to $400, depending on the relevant attorney's experience."); *Duran-Peralta*, 2018 WL 1801297, at *2 (same) (collecting cases). Courts in this District have also held that "it is appropriate to determine whether the billing attorneys are more like members of a large New York City law firm than they are like

9

members of a nonprofit organization or a two or three-person [] law firm," *Finch v. N.Y. State Office of Children & Family Servs.*, 861 F. Supp. 2d 145, 153 (S.D.N.Y. 2012). If an attorney works at a large international law firm as opposed to a small local firm, it weighs in favor of awarding a higher rate. *See Duran-Peralta*, 2018 WL 1801297, at *3. It appears that Burger Green & Min LLP is a 14-person law firm based out of New York City and Garden City, New York, focusing on domestic and international family law matters. *See About*, GREEN KAMINER MIN & ROCKMORE LLP, https://www.burgergreenlaw.com/about/ (last visited July 21, 2022).[3] The firm is therefore somewhere in between a large international law firm and a small two or three-person firm, and the Court will adjust its analysis accordingly.

Here, Petitioner requests the following hourly rates for five attorneys from Burger Green & Min LLP: Richard Min ($600/hour), Nancy Green ($550/hour), Michael Banuchis ($525/hour), Samantha Jacobson ($325/hour), and Sydney Goldstein ($250/hour). (*See* Pet'r's Mot. ¶¶ 14–30.) The Court will evaluate the reasonableness of each attorney. First, Richard Min is an experienced partner with a specialty family law and Hague Convention cases. (*Id.* ¶ 16.) He has litigated over 30 child abduction cases, including serving as lead counsel for at least 17 Hague Convention trials. (*Id.* ¶ 21.) He charges a rate of $600/hour. (*Id.* ¶ 24.) Given Min's experience and expertise, but keeping in mind the prevailing rates in this District and the size of the firm at which Min practices, the Court finds that a rate of $425 is appropriate. *See Grano*, 2021 WL 3500164, at *3 (reducing rate from $600 to $425/hour for attorney with over 40 years of practice and who was a "leading expert" in the Hague Convention and had handled

---

[3] Although the law firm is referred to as Burger Green & Min LLP in Petitioner's papers, (*see e.g.*, Pet'r's Mot.), on its website the firm is referred to as Green Kaminer Min & Rockmore LLP, *see* GREEN KAMINER MIN & ROCKMORE LLP, https://www.burgergreenlaw.com/ (last visited July 21, 2022). The Court will refer to the law firm as it is referenced in the Petitioner's papers.

10

"hundreds" of Hague Convention cases); *Sanguineti v. Boqvist*, No. 15-CV-3159, 2016 WL 1466552, at *4 (S.D.N.Y. Apr. 14, 2016) (awarding $335/hour to solo practitioner with over a decade of experience in family law with a focus on Hague Convention); *In re One Infant Child*, No. 12-CV-7797, 2014 WL 704037, at *4 (S.D.N.Y. Feb. 20, 2014), *rev'd sub nom. on other grounds*, *Souratgar*, 818 F.3d 72 (2d Cir. 2016) (awarding $425 per hour to a lawyer with 37 years of practice in the family law field who had handled many Hague Convention cases); *Distler v. Distler*, 26 F. Supp. 2d 723, 727 & n.3 (D.N.J. 1998) (awarding $350 per hour in a Hague Convention case for "very experienced" counsel who had over twenty years of experience and had handled 165 cases under the Convention).

    Next, Nancy Green is a partner with 29 years of experience primarily as a family law attorney and has litigated "several" Hague Convention cases. (Pet'r's Mot. ¶ 25.) Her billing rate is $550/hour. (*Id.* ¶ 26.) Green is undoubtedly an experienced attorney, but, by Petitioner's own admission, she has only litigated a handful of Hague Convention cases. The Court therefore finds that a rate of $350 is warranted. *See Duran-Peralta*, 2018 WL 1801297, at *3 (reducing hourly rate from $875 to $400 for a partner at an international law firm with over 40 years of experience who had only litigated one other Hague Convention case); *In re One Infant Child*, 2014 WL 704037, at *4 (awarding $300/hour for attorney with 26 years of practice).

    Michael Banuchis is a partner with 12 years of experience, which includes litigating 11 Hague Convention cases. (Pet'r's Mot. ¶ 27.) His billing rate is $525/hour. (*Id.* ¶ 28.) The Court finds, on this record, that $325/hour is an appropriate billing rate for Banuchis. *See Knigge*, 2001 WL 883644, at *3 (awarding $200/hour to an attorney who was 13 years out of law school and had worked on at least one Hague Convention case); *see also Hulsh v. Hulsh*, No.

19-CV-7298, 2021 WL 963770, at *4 (N.D. Ill. Mar. 15, 2021) (citing *Nissim* and reducing partner's rate from $375 to $262).

Samantha Jacobson is an associate with three years of experience and has worked on seven Hague Convention Cases. (Pet'r's Mot. ¶ 29.) Her billing rate is $325/hour. (*Id.*) Although Jacobson has worked on a fair number of Hague Convention cases in her time as an attorney, courts in this district have awarded lower hourly rates to associates with far more experience. *See, e.g.*, *Nissim*, 2020 WL 3496988, at *4 (awarding rate of $225/hour to associate with ten years of experience); *see also Hulsh*, 2021 WL 963770, at *4 (citing *Nissim* and reducing rate of associate from $200 to $175/hour). The Court therefore finds that a rate of $200/hour is appropriate for Jacobson.

Finally, Sydney Goldstein is a 2021 law school graduate who, at the time that the Motion was filed, had not yet taken the New York State Bar. (Pet'r's Mot. ¶ 30.) Goldstein's rate is $250/hour. Although Goldstein has graduated from law school, since she is not yet a practicing attorney, the Court will consider her to be somewhere between an attorney and a paralegal when determining her appropriate billing rate. "Courts in this District typically award rates not to exceed $200 per hour for paralegals." *Duran-Peralta*, 2018 WL 1801297, at *3; *Sanguineti*, 2016 WL 1466552, at *4 (collecting cases for the proposition that courts within this district typically award $100–$130 for paralegal work). The Court therefore finds that $175/hour is an appropriate rate for Goldstein.

The Court next considers the reasonableness of the hours expended by Petitioner's attorneys. "In determining the number of hours reasonably required, a court should exclude 'excessive, redundant[,] or otherwise unnecessary hours.'" *Knigge*, 2001 WL 883644, at *2 (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). Petitioner submits that

her attorneys expended 47.3 hours working on her case, which amounted to a total of $18,830 in attorney's fees. (Pet'r's Mot. ¶ 12.)[4] Petitioner reduced this number by two-thirds in her Motion, requesting a total of $12,553.33 in attorney's fees. (*Id.* ¶ 6.) Although the Court does not find that the hours expended by the attorneys in this case were excessive, the Court notes two compelling reasons why the two-thirds reduction is nevertheless appropriate, even with the Court's reduction in the attorneys' billing rates. First, as discussed above, the fact that Burger Green & Min LLP represented Petitioner on a pro bono basis merits a reduction in the amount of fees awarded. *See, e.g.*, *In re JR*, 2017 WL 74739, at *3 ("Although the fact that the firm appeared pro bono does not preclude an award of fees and costs, it does warrant a reduction in the amount awarded."); *see also Rosasen v. Rosasen*, No. 19-CV-10742, 2020 WL 4353679, at *4 (C.D. Cal. June 5, 2020) (noting that the petitioner reduced their requested attorney's fees by 50%); Reply Brief for Petitioner at 3, *Rosasen*, 2020 WL 4353679 (No. 127), 2020 WL 12802492 (noting that the petitioner in *Rosasen* was represented by pro bono counsel). Second, the fact that the case was settled quickly and without a trial merits a further reduction. In *Salazar*, for example, the Fifth Circuit affirmed the district court's reduction of fees by approximately 50% where the parties settled before trial. *Salazar*, 750 F.3d at 523. Even where the parties do go to trial, however, courts in this District have reduced awards by substantial amounts. *See, e.g.*, *Sanguineti*, 2016 WL 1466552, at *5 (reducing attorney hours spent drafting

---

[4] Petitioner provided the specific number of hours that each attorney expended on her case and organized that data in a chart. The numbers are as follows: Min (9.4 hours), Green (3.8 hours), Banuchis (0.5 hours), Jacobson (28.1 hours), and Goldstein (5.5). (*See* Pet'r's Mot. ¶ 14.) There is also an entry for an employee with the initials "EB," who billed 0.8 hours at a rate of $175/hour. (*See id.*) Because Petitioner provides no further information about EB, including their full name, whether they are a paralegal or an attorney, what experience they have, and what type of work they did for the case, the Court will not consider EB's hours as part of its calculations.

pretrial material and preparing for trial by approximately 65%). The Court will therefore further reduce the fees awarded by two-thirds. This amounts to a total of $7,341.67.[5] The Court also adds costs in the amount of $300, which Burger Green & Min LLP paid to a process server on Petitioner's behalf. (*See* Pet. ¶ 15.) Thus, the Court awards Petitioner a total of $7,641.67.

### III. Conclusion

For the reasons articulated above, Petitioner's Motion for Attorney's Costs and Fees is granted in part. That is, Petitioner is awarded attorney's fees and costs in the amount of $7,641.67. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 15), and close this case.

SO ORDERED.

DATED:   July 21, 2022
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[5] The Court calculated this number by multiplying the number of hours for each attorney as provided in the Motion, (*see* Pet'r's Mot. ¶ 14), by the hourly rate for each attorney as determined by the Court above. That is, $400/hour for Min, $350/hour for Green, $325/hour for Banuchis, $200/hour for Jacobson, and $175/hour for Goldstein. *See supra* Part II.B.2. The Court then reduced that number by two-thirds.